Good morning, Judge. Can you hear me? Yes. Is this Mr. White? Yes, ma'am. I got to tell you I was horrified that I was saying hello, hello, and no one could hear me. Apparently there's some technical problem, but thank you for being so patient. Well, you have your chance now. Thank you. Good morning. May it please the court. My name is Van White. I'm the attorney for Mr. Charles Pierre. Again, thank you for being so patient. In large part, I'm going to rely on my written submissions. I apologize that visually I can't see you this this morning. I know however, what the defense counsel is going to say and I know what I think the court may be thinking. That's because there was no debt because there was no clearly established statutory or constitutional rights. All defendants are immune from suit no notice as to how they were required to act. But could this really be true? Why shouldn't these officers and these prosecutors be on notice that withholding exculpatory information for at minimum 10 years while a man was sitting in prison is wrong. Let's assume for the sake of argument that the defense is right on the law. This court or no other court has ever stated that it is wrong for the defendants to have sat on evidence when a man is sitting in prison. But we know these officers and the assistant district attorneys knew better. You may be asking why should we hold them to have known better? The DA knew better because of rule 3.8 g of the New York Cans of ethics. It lays out clearly a prosecutor's responsibility when it comes to disclosure and post conviction cases. Now I offer this rule. What period are you claiming? Are you claiming the period from the first mention in the police report? That would have been 2005. Or you correct from 2012. So we're claiming from the very beginning, it was a stray mentioned in a police report on a domestic relations case. And you think that who had the duty to do anything after that? I think the officers, the two defendants that we propose to put in a complaint had the duty to disclose that to Mr. Pierre. It was very clear. The wife of the alleged murder, the person were convinced committed these murders, said her husband had confessed to these murders. The officer knew that there was deposition testimony that they knew that, but there was no follow up to it. And certainly no, none of this information was given to Mr. Pierre. And that was in 2005. He wasn't acquitted until 2015 and sat in prison that whole time. And this is Mr. White. Excuse me, Mr. White. This is Judge Lynch. Didn't the Supreme Court say as late as 2009 that there is no obligation, no Brady obligation post conviction in the Osborne case, the Alaska case? That is absolutely correct. Mike, doesn't this doesn't this create a problem for you, even as to the law? I mean, I recognize that we we were able to maneuver around Osborne in Newton against city of New York in a somewhat factually distinct situation. But that didn't happen until 2015. So I'm having trouble understanding why you can say it was obvious in 2005 that there was an obligation on prosecutors that in 2009, the Supreme Court. Is the court still there? Yes. Yes. Yeah. Judge, I, as I said, I'm not going to review the law or dispute that with you. I'm here to argue that I understand what the court is position is, and I anticipate that would be the court's position. But I'm here to say that such a position runs counter to what we understand, what we're taught as children from our mothers, our grandfathers, our uncles, our aunts. Indeed, we hope that our history teachers and our social studies teachers and our gym teachers tell officers, DAs and judges that you have to be honest and transparent in your dealings with people. In all likelihood, it's very possible that their rabbis, their pastors, their clerics told them that if someone gives you information and the notion of fairness and honesty, you have to turn that information for it. Now, maybe, as you say, not maybe the Supreme Court did not say that. But can we stand here and say, in honesty, can the Second Circuit say that these officers in these system district attorneys didn't know what was right, what the right thing to do was morally. Now, the defense will say that, as you've indicated, there was no clearly articulated standard that would require this. And the court has indicated that the Supreme Court has was unequivocal in this. This is not a Brady. You don't you don't you don't have that right as you do under Brady. But this but this court, for what it's worth, can make it loud and clear that it's not fair that it's not right for officers to withhold such information, even after a person is convicted. If you don't do this for Charles Pierre, do it now going forward, so that every other inmate who's wrongly convicted, who is sitting in jail, believing no expecting that we have a system that believes in fairness, honesty, and transparency at every phase of our system. Not just because he said not just when he's sitting at the defense table with Brady, but when he's sitting in the prison cell, these are the things that he or she is taught in school just like you or I, by his teachers by his preachers, preacher, respectfully, these are the things that that you were probably taught and continue to live by. If you don't, we will have a civil justice system that is disconnected from the basic American values that we all prisoners, preachers, and lawyers and judges that we all hold dear. Judge Lamer stated in warning versus the city of Rochester, which this court did consider several years ago. And he said it clear. Evidence, especially compelling evidence of innocence should not be suppressed, regardless of how or when is obtained. There's something that's right. Mr. White, can I can I ask you, I'll take you up on this because I'm very interested in what rule we we could have. I appreciate your point. But let's even turn to the 2012 situation. Are you because in 2012, the police finally start to take this seriously. Are you suggesting that the rule that you would adopt in terms of basic honesty is that this should be disclosed to Mr. Pierre immediately at that point? If the rule 3.8 g I know it's not dispositive of this court's decision. But if you look at that canons of ethics in New York State, that's essentially the rule. If you're a with respect to a post conviction case. Yes, sir. Because it seems to me that the this allegation now we can have an interesting discussion or we certainly could if this were a legal issue that were open to us to decide about how long it should take before that allegation needs to be disclosed or for that investigation to continue. But surely you agree that by the time the disclosure was in fact made to Mr. Pierre, the disclosure was a lot more potent than what it was at the moment that this old police report surfaced in 2012, right? Absolutely. And in fact, if you look at something gained by the police taking the time to do a thorough investigation and unearth additional corroborating evidence. So I'm concerned about if the rule is that at day one in 2012, this should be or at least at the point where the investigating officers got finally got Mrs. Boyd to disclose more than she had at the time of the 2005 episode. If they turn that right over to defense counsel, doesn't that risk compromising their investigation? I mean, they want to do things in a systematic way. They want to talk to other witnesses before they talk to Mr. Boyd. If you let other people in on the investigation, doesn't that create problems? I'm not, you know, I used to be a prosecutor and I don't think that it does. If they were to go to Mr. Pierre and say at that time, say, hey, Mr. Pierre, this guy, confessed to the crime. How does that matter? They went to Mr. Boyd. That might affect maybe how he postures himself. But but I don't I suppose hypothetically, it could somehow affect the investigation. But well, wouldn't it if the defense counsel then undertakes to do his or her own investigation? It's no longer in the hands of the authorities and they have no ability to I'm sensitive to your argument about what the rule in theory maybe should be. But I'm just trying to figure out what actually the rule is. Are you advocating for a rule that every time the police come upon a tip that may suggest that is certainly the kind of thing that's exculpatory information that at the stage of a trial, after they've done their thorough investigation, after they've brought an accusation against a defendant, that it's time now to say, look, here's something we didn't credit it at the time, but it's there and go figure if you can make a defense out of it. God bless you. That's a little bit different than a situation where, you know, in effect, in the middle of trying to investigate to determine the validity of this is here. I'm getting it. I do. But and all I can do, and I realize it's not dispositive, Your Honor, is point to 3.8. Someone thought in the canons of ethics probably thought through this very scenario that you're concerned about. And if you look at that rule, those canons of ethics, very clear, there's no wait a second, how might this be viewed? Might this compromise the investigation? 3.8 is very clear prosecutor actually has to go to the go to the defendant or convicted person, or in the alternative, if he can't or won't do that, he or she has to go to a judge and explain why they cannot produce the information. So that might get to your scenario. If they were concerned if those two potential defendants were concerned that it might somehow compromise your investigation, and I respectfully submit they weren't concerned about that. They never thought and they still do not believe this guy is the murderer, even though the jury acquitted my client within two hours, less than two hours. That wasn't their intention. But it's legitimately concerned about that 3.8 lays out the process by which you would do that. If you if there's some legitimate interest in this information, not getting out, you go to a judge and you explain to a judge why you cannot disclose it. They didn't do that here. Again, whatever rule that could be fashioned, there's got to be something better than well, he's been convicted, so he's just going to sit in prison and we don't have to give him this information. Because because in the end, this kind of disconnectedness, the thing that I hear your honor saying, I understand where you're coming from, is a disconnectedness that I think quite honestly, is causing the disruption and despair that we see in the streets today. As adults, people don't see the kind of fairness that is described to them in history books in the comment of the Quran or the Bible that they read as children. Yes, ma'am. So your time is long since expired. You've reserved some time for rebuttal. Let's turn to the appellees. Thank you. Go first. Dorely. Is that you, Mr. Clark? Yes, that's me, your honor. Can you hear me, your honor? Yes. Okay, thank you. My name is Adam Clark, and I am representing the appellees Michael Green, Sandra Dorely, Monroe County District Attorney and Monroe County, which is basically all the district attorney defendants. And the district attorney defendants did not know about the information in question until May of 2012. And I don't think that's disputed. So there was no question of that being known back in 2005. And I just want to hit on just a start. Mr. White has talked a lot about the New York rule of ethics 3.8g. But the rule he's talking about, which was cited by this court in Warney is from the model rules and has not been adopted by New York either at the time when all of these events occurred or now. The actual rule as adopted by New York in 2012, in July of 2012, is New York rules of professional conduct 3.8c through e. And in section e of that, it specifically carves out an exception for prosecutors that says, a prosecutor's independent judgment made in good evidence is not of such nature as to trigger the obligations of section c and d. Those subsequently determined to have been erroneous does not constitute a violation of this rule. So even in the rules in New York state, which as Mr. White said, are not dispositive, but even in the rules, there's not a legal requirement that prosecutors immediately take dispositive evidence to a post-conviction defendant. Now, what the rules and what the ethics of the prosecutors require at this point is that they make a judgment based on the information that they have before them and what investigation needs to be made. And that's the rule as it stands. And again, as there's no constitutional rule establishing the right to immediate disclosure and for such a rule to be there, it would have to be established later. But this case on the face of the complaint, there it is shown that there was more information at the time the disclosure was made than at the time that the county defendants first became aware of this information in May of 2012. And that's because they went about investigating this information. And Mr. Clark, excuse me, how detailed is the record in terms of the timeline of that investigation? Because the disclosure isn't made until sometime in 2013. Is that correct? Yes, we do have a detailed record on that, but it's not really an issue on this motion because it deals with the facts. But I believe that the second important witness who was an alleged confession to him, I believe the district attorney's office took a statement from him in August of 2013. Why did you elect to retry Mr. Pierre? What's that? Why did you elect to retry Mr. Pierre? Why did we elect to? Retry him. Retry him? Because the district attorney's believed that the evidence still supported the claim against him, notwithstanding the confession that had been alleged, the hearsay confession that had been alleged. And the second trial, there were witnesses who were kept out of the trial who were allowed to testify in the first trial. And we believe that that... There were no witnesses to the murder or the arson. There were just witnesses who saw Mr. Pierre in the general location on the day of the murder, correct? There were witnesses to seeing him in the general location and witnesses to... The first time that was enough to convict him. Why did you elect to go to trial again when you had a confession, a jailhouse confession, and the wife who said, my husband did it? Why did you go to trial again on this guy? Well, Your Honor, again, they believed that the evidence supported still prosecuting him. And the jailhouse confession was not a... It was not a clear confession of, I did this. It was more of a question to someone acting as a jailhouse attorney of, my wife is saying things about me. Can I be prosecuted for this? So the district attorneys made the judgment call that they did. In this case, this lawsuit is not... Excuse me, Mr. Boyd lived in the same building that he is alleged to have set fire to an apartment at the time of the crime. Is that right? Yes, Your Honor, it's right. I mean, it's not, it's not like crystal clear that this is the guy who did it. At least there's an argument available that it's very unlikely that he would set fire to the building that he lives in. That could be possible, Your Honor. To this date, the district attorneys have not felt that there was sufficient evidence to prosecute Mr. Boyd is in prison for another murder that he was convicted of, that he was prosecuted for. It all came about at the same time. He was investigated for this murder. He was investigated in 2012. And that's when this statement came to light again that had been taken in 2005. And whatever, whatever this judgment, the district attorneys made at the time that they decided to retry Mr. Pierre, we wouldn't even be here if they hadn't disclosed eventually the results of the investigation that they got involved with in 2012. Right? That's right, Your Honor. They're the ones who presented this information to Mr. Pierre, and they did perhaps belatedly. And I understand the argument that maybe it shouldn't have taken a year or whatever, but they disclosed this information and said, here's it's exactly what Mr. White says should be done. Just a question of when it got done. They disclosed the information, and then they made their decision about whether that information warranted them to drop the case or whether they were still going to prosecute the case and let Mr. Pierre who they disclosed the information that resulted in Mr. Pierre getting a new trial. And then they decided to have the new trial rather than to drop the case. That's that's what happened here. Right. That's right, Your Honor. Thank you, counsel. We'll hear from the city of Rochester. Thank you, Your Honors. Good morning, Your Honors. Patrick Beith for the city of Rochester and the Rochester Police Department. This case really begins and ends with the Supreme Court's Osborne decision. The Supreme Court made very clear that there is no Brady type entitlement to disclosure of exculpatory evidence that's encountered post conviction. That's plainly what the plaintiff's matter is claiming he was entitled to a Brady like disclosure of this information post conviction as early as 2005. While there is a liberty interest under New York State law in proving one's innocence through newly discovered evidence. 44010 of the criminal procedure law does not require any affirmative disclosure of exculpatory evidence by police. There's nothing in McKithen or Newsom that changes that. And the other instruction from Osborne and from Medina v. California that the court relies on in its analysis is that if there's going to be some sort of rule that provides for sort of disclosure of evidence encountered post conviction, it's something that the legislature of New York State needs to implement, not the courts. It's the legislature that can assess what materiality of evidence would give rise to some sort of disclosure obligation. Whether that disclosure obligation would pertain to prosecutors alone, if it would pertain to prosecutors and police, if police would have an obligation as the plaintiff seeks here to disclose directly to the convicted defendant, or to disclose to prosecutors in a Brady type fashion, there's a lot of questions that really need to be waded through to decide what an appropriate rule is to get to the justice that plaintiff's counsel is arguing for. There's another remedy, though, too, isn't there, Mr. Beets, which is internal to the police department and also to some degree to district attorneys if they become aware of this information or they're made aware of this information. I would think that anyone with law enforcement experience would agree that if a disclosure like that made by Mrs. Boyd in 2005 came up in a case that was unsolved, the police would be on that like hounds. They would pursue that information to see whether Mr. Boyd, there was a plausible case to be made against Mr. Boyd. And it seems to me that a lot of what police reform advocates are arguing for is that that obligation and that professional obligation on the part of the police to figure out where the truth really lies does not end after they've convinced themselves that they've got the right guy and that they remain as open to new information after a case has been closed as they were at the start. And that's something that a police department can certainly do on its own without waiting for the state legislature is to pay attention to something like this and raise the question of, you know, my God, what if we were wrong? Shouldn't we look into this and satisfy ourselves that this is a either Mrs. Boyd isn't telling the truth or Mr. Boyd was in some perverse braggadocio mode at the time. You know, to bury this in the file, we all know that would not have happened if they said, aha, here's a break. Now we can pursue this investigation and see whether Boyd is the guy. I don't know if that says anything about the constitutional rule or any of the is that police departments and prosecutors are more alert to the possibility of wrongful convictions and understand that there is a professional, whether or not it's a constitutional or a legislatively enacted obligation to follow up on information that suggests that they may have been wrong in the first place. Your Honor, I hear you loud and clear. And I would say, based even on the facts of this case, that even in 2005, when this information was first encountered, there was some attempt to conduct an investigation. The officer recorded what had transpired, the allegation that was made by Miss Boyd. He attempted to get more information from her at the scene, and she wouldn't give it. And then it became part of the file and was found later in 2012. But there was no follow up, right? There was no follow up when she said, I don't want to talk about it anymore. There was no further follow up. But I think we have to remember that this was a case where there was a person already convicted after a fair trial and serving time. So he had gotten this hearsay allegation in the heat of this domestic dispute as Miss Boyd was trying to get her out of the apartment, her husband out of the apartment. And as soon as he left, she wouldn't say anymore. There's limited means for a police officer to continue to investigate that. And there are different constraints on a police... It wasn't exactly hearsay. She told him, my husband said he did it. Right, she told him, he said he did it, right? So she was reporting what her husband had told her. There are a lot of different administrative constraints on a police department. And certainly investigating unsolved crimes takes priority over investigating crimes where somebody has been convicted after a fair trial. So I think again, yes, there can be procedures in place to make sure that there's a robust process in a police department for making sure people aren't wrongfully convicted. But it's also the state legislature. If there's going to be safeguards to make sure people aren't sitting in jail, they need to be the ones to pass those laws to require some sort of investigation. Thank you, counsel. Mr. White, you have some time for rebuttal. Go on. Thank you. Just a couple things. Someone asked why did they retry him? Well, you should know, and I think it's part of the record, that the district attorney at the time, 14, 15 years ago, was the assistant district attorney that prosecuted the case. I should also note there was a discussion of witnesses. The court is absolutely correct. It was an admission by Mr. Boyd to his wife. So clearly would have been reliable, believable, and certainly worthy of defense counsel also correctly indicates that there were actually two admissions. One was to another inmate in the jail. Mention was made that Mr. Boyd was subsequently convicted. What was not mentioned, I think it is in the record, he was convicted of murdering a woman, beating her in the same way to death, the same way he murdered those two people on First Street, and set a fire, the building on fire, just as he did on First Street, and escaped out a window, just as we maintain, and apparently the jury believed that he did in the First Street homicide. Let me just say, part of the reason why I think we're struggling with this as a community is because it's not clear. The Supreme Court, we've talked today about the Supreme Court, we've talked about the legislature, we've talked about the bar, the cans of ethics versus the New York rule. I think one of your honors, I'm sorry, I don't have my the camera so I can't see. Someone said, well, the police can do it. Can't they? Couldn't they have aggressively filed up on this? Well, it's obvious, given what happened in this case, and the countless other cases that we're looking at in the news, that's not going to happen. So this court, I don't know, to be quite honest, I don't know what rule it is that you would fashion, whether it would be adjusting the 3.8 rule and making that into some kind of doctrine, taking the New York rule, but this court can and should try to articulate what the standard is, even if it may not affect Mr. Pierre, but this confusion is going to cause the level of disconnectedness people are living in two different worlds. This court can reconcile those worlds by being clear about what the standard is, what prosecutors must do what police officers must do. Tell Mr. Pierre, every prisoner, every prosecutor, every citizen in this circuit, that the concept of fairness and honesty that we learn as children will apply with equal force when we are adults. Thank you for your indulgence. Thank you, Mr. White. Thank you all. We'll reserve decision. Thank you for good argument. Thank you.